[Dkt. Nos. 8, 9]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| ROBERT STIRES, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>       v.<br><br>ECO SCIENCE SOLUTIONS, INC.; JEFFREY TAYLOR; and DON LEE TAYLOR,<br><br>            Defendants. | Civil No. 17-3707(RMB/KMW)<br><br>**OPINION** |
| DAVID PENHOLLOW, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>       v.<br><br>ECO SCIENCE SOLUTIONS, INC.; JEFFREY TAYLOR; and DON LEE TAYLOR,<br><br>            Defendants. | Civil No. 17-3760(RMB/KMW)<br><br>**OPINION** |

|  |  |
|---|---|
| JIAXIN LU, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>     v.<br><br>ECO SCIENCE SOLUTIONS, INC.; JEFFREY TAYLOR; DON LEE TAYLOR; and GANNON GIGUIERE,<br><br>           Defendants. | Civil No. 17-5161(RMB/KMW)<br><br>**OPINION** |

BUMB, United States District Judge:

This matter comes before the Court upon the filing of competing motions by Richard Roschke ("Roschke"), [Dkt No. 8], and Suzanne Rice, Juzo Mizuno, Fred Torbaty, Ken Shollmier, and Stephen Glogowski (the "Eco Science Investor Group"), [Dkt. No. 9] to consolidate the above captioned cases, appoint a lead plaintiff, and appoint lead counsel. For the reasons set forth below, the Court will grant Roschke's motions to consolidate the above captioned cases and appoint Roschke lead plaintiff, and will reserve judgment on Roschke's selection of Glancy, Prongay & Murray LLP as lead counsel with Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., as liaison counsel for the proposed class pending the submission of supplemental briefing.

**I.   Factual and Procedural Background**

2

Presently pending before this Court are three related class action lawsuits brought on behalf of individuals and entities (the "Plaintiffs") that acquired Eco Science Solutions, Inc., ("Eco Science" or the "Company") securities between December 2, 2016 and May 19, 2017 (the "Class Period") against Eco Science and individual defendants Jeffrey Taylor, Don Lee Taylor, and Gannon Giguire (the "Individual Defendants," and collectively with Eco Science the "Defendants").[1] The first of these suits, <u>Stires v. Eco Science Solutions, Inc. et al.</u>, No. 17-3707, (the "Stires Suit") was filed on May 24, 2017 by Plaintiff Robert Stires ("Stires"). The second suit, <u>Penhollow v. Eco Science Solutions Inc. et al.</u>, No. 17-3760 (the "Penhollow Suit") was filed on May 26, 2017. The third suit, <u>Lu v. Eco Science Solutions Inc. et al.</u>, No. 17-5161 (the "Lu Suit") was filed on July 14, 2017.[2]

---

[1] Jeffrey Taylor is a Director of Eco Science and serves as its President, Chief Executive, and Corporate Secretary. (Stires Compl. ¶ 8). Don Lee Taylor is also a Director of Eco Science and serves as the company's Chief Financial Officer and Treasurer (<u>Id.</u> at ¶ 9). Gannon Giguiere was the President of Separation Degrees – One, Inc. and the Managing Member of Phenix Ventures, LLC, two companies with which Eco Science allegedly engaged in transactions designed to enrich Giguiere at the expense of the investing public (Lu Compl. ¶ 20).

[2] The Stires and Penhollow Suits proposed Class Periods of May 1, 2017 through May 19, 2017. The Lu Suit extended the Class Period to include December 2, 2016 to May 19, 2017. For the purpose of determining Lead plaintiff, this Court finds that the use of the longer period proposed by the LU Suit is proper. The longer period "encompasses more potential class members" and covers more of the time in which Defendants' alleged improper behavior

Through these suits, Plaintiffs seek redress, pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 for alleged "false and/or misleading" statements or failure to disclose materially adverse facts by Eco Science in its December 2, 2016 Form 10-Q, May 1, 2017 Form 10-k, and a public statement released May 5, 2017 related to the purchase of Ga-Du Bank, Inc., and for the Individual Defendants' participation in the alleged misconduct. Specifically, Plaintiffs allege that Eco Science, which purportedly was a technology company targeting the health and wellness industry—largely the cannabis industry—with mobile apps and software, was actually operating a "pump and dump" scheme and failed to disclose, among other things,

> (1) that the Company was using advertising funds to promote the Company's stock; (2) that the Company's mobile app products were essentially worthless; (3) that the Company engaged in a series of transactions intended to enriching [sic] Defendant Gannon Giguiere at the expense of the investing public; . . . (4) that Ga-Du Bank was operated by the Southern Cherokee Nation and The Red Fire People Central Bank, a purportedly unrecognized Native American tribe; (5) that the Company disseminated false information concerning, among other things, Eco Science's proposed acquisition of Ga-Du Bank; . . . and [6] that, as a result of the foregoing, Defendants' statements about Eco Science's business, operations, and prospects,

---

was underway. See In re Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006). Moreover, in their respective motions, the movants do not appear to dispute that this Class Period should apply.

4

      were false and misleading and/or lacked a reasonable
      basis.

(Lu Compl. ¶ 24, 28).

On December 15, 2016 and May 15, 2017, SeekingAlpha.com released reports raising concerns about Eco Science that were similar to the allegations made in the Complaints. On May 19, 2017 the SEC issued a release announcing that it had "temporarily suspended trading in the securities of [Eco Science] because of concerns regarding the accuracy and adequacy of publicly disseminated information concerning, among other things, [Eco Science]'s proposed acquisition of Ga-Du Bank, Inc." (Stires Compl. ¶ 19).

As noted above, Stires filed the first Complaint in this action on May 24, 2017. On the same day, counsel for Stires published a notice on Business Wire, announcing that a securities class action had been initiated against Eco Science and the Taylors, as is required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4(a)(3)(A)(i), (A)(ii).  On July 24, 2017 Roschke, the Eco Science Investor Group (collectively with Roschke, the "Movants"), and proposed class member Robert Faucheux ("Faucheux") timely filed competing motions to (1) consolidate the pending actions; (2) be appointed lead plaintiff; and (3) have their counsel approved as lead

counsel. See 15 U.S.C. § 78u-4(a)(3)(B). On October 13, 2017, Faucheux withdrew his motions.

**II. Analysis**

    A. Consolidation

The Court will turn first to the motions to consolidate, as the PSLRA requires.[3] As noted above, both Roschke and the Eco Science Investor Group have moved to consolidate the actions presently pending before this Court.

Fed. R. Civ. P. 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." "The decision as to whether consolidation is appropriate embraces concerns of judicial economy, as well as judicial discretion." In re Lucent Techs. Inc. Sec. Litig., 221 F. Supp. 2d 472, 480 (D.N.J. 2001)(citations omitted); see also Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 80 (D.N.J. 1993) ("Rule 42(a) gives the [D]istrict [C]ourt 'broad powers to consolidate actions involving common questions of law or fact if, in its

---

[3] 15 U.S.C. § 78u-4(a)(3)(B)(ii) provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions . . . the court shall not" appoint a Lead plaintiff "until after the decision on the motion to consolidate is rendered." Although the PSLRA mandates that motions to consolidate be decided before the appointment of Lead plaintiff and Lead counsel, courts often decide these motions together, and this Court does here.

6

discretion, such consolidation would facilitate the administration of justice.'")

"Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated." In re Lucent Techs., 221 F. Supp. 2d at 480. Instead, the decision whether to consolidate actions requires consideration of

> whether . . . risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, lawsuits, the length of time required to conclude multiple lawsuits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

(Id.) (citations omitted). "In the absence of an articulated basis to assert confusion or prejudice, consolidation is generally appropriate." Id.

As common questions of law and fact abound, the Court finds that the actions here are appropriate for consolidation. As described above, the Stires and Penhollow Suits are nearly identical. Both assert violations of Section 10(b) and 20(a) of the Exchange Act and Rule 10b-5 against Eco Science, Jeffrey Taylor, and Don Lee Taylor relating to the May 1, 2017 Form 10-K and the May 5, 2017 public statement concerning Eco Science's purchase of Ga-Du Bank. Both complaints also propose identical classes consisting of individuals and entities that acquired Eco Science securities between May 1, 2017 and May 19, 2017. The Lu

7

Suit raises the same causes of action, but extends the Class Period to incorporate the December 2, 2016 Form 10-Q and adds allegations against Gannon Giguire. Despite minor differences, the complaints center on the same set of operative facts during substantially the same time period. Accordingly, the Court finds that the interests of judicial economy and the administration of justice will be best served by consolidation, and these matters shall be consolidated into one action captioned <u>In re Eco Science Solutions, Inc. Securities Litigation</u>.

### B. <u>Appointment of Lead Plaintiff</u>

The PSLRA provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u–4(a)(3)(B)(i). To determine the "most adequate plaintiff," and thus select the lead plaintiff, courts must undertake the following analysis:

> **(i) In general**
>
> Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> **(aa)** has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> **(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and

8

> **(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
>
> **(II) Rebuttal evidence**
>
> The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> **(aa)** will not fairly and adequately protect the interests of the class; or
>
> **(bb)** is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Id. § 78u-4(a)(3)(B)(iii). For the purposes of a lead plaintiff motion, the Court need only examine the typicality and adequacy prongs of Rule 23(a). Chao Sun v. Han, No. 15-703, 2015 WL 2364937, at *2 (D.N.J. May 14, 2015)(citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir. 1992)); In re Nice Sys. Secs. Litig., 188 F.R.D. 206, 217 (D.N.J. 1999).

### i. Largest Financial Interest

The first step in determining the presumptive most adequate plaintiff is to determine which movant "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). The PSLRA does not instruct courts how to determine the "largest financial interest." In In re Cendant Corp. Litigation, however, the Third Circuit provided that in making this determination, "courts should consider, among other things: (1) the number of shares that the movant purchased

9

during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." In re Cendant Corp. Litigation, 264 F. 3d 201, 262 (3d Cir. 2001). The third factor, "approximate losses suffered," is often considered the most important. Roby v. Ocean Power Techs., Inc., 2015 WL 1334320, at *5, *14 (D.N.J. Mar. 17, 2015).

The movants here agree on the numbers: the members of the Eco Science Investor Group collectively lost $303,208.42 and Roschke lost $294,666.00. Thus, the Eco Science Investor Group has the "largest financial interest in the relief sought by the class" and will be the presumptive most adequate plaintiff if it "otherwise satisfies" the typicality and adequacy requirements of Rule 23.

### ii. Typicality and Adequacy

The Third Circuit has provided that "[t]he initial inquiry (i.e., the determination of whether the movant with the largest interest in the case "otherwise satisfies" Rule 23) should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy." In re Cendant Corp. Litig., 264 F.3d at 263. This "threshold determination . . . should be a product of the court's independent judgment," and in reaching it the Court "may and should consider the pleadings that have been filed, the movant's application, and any other

10

information that the court requires to be submitted." Id. at 263-64. "When making these determinations, courts should apply traditional Rule 23 principles." Id. at 264.

> Thus, in inquiring whether the movant has preliminarily satisfied the typicality requirement, they should consider whether the circumstances of the movant with the largest losses "are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based."
>
> . . .
>
> In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class."
>
> . . .

Id. at 264-65 (alterations in original) (internal quotations marks and citations omitted).

In the PSLRA context, there are two additional factors regarding adequacy. Id. at 265. The first of these additional factors is "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel . . . ." Id. (citing In re Quintus Sec. Litig., 201 F.R.D. 475, 485 (N.D.

11

Cal. 2001)).⁴ The second additional adequacy factor, and the crucial factor in this case, "arise[s] only when the movant with the largest interest in the relief sought by the class is a group rather than an individual person or entity." Id. at 266. In light of the PSLRA lead plaintiff provision's goal of "locat[ing] a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class," and as part of the PSLRA's larger goal of encouraging party-driven—as opposed to lawyer-driven—litigation, where a group seeks appointment as lead plaintiff, the Court must "determine . . . [whether] the way in which . . . [the] group . . . was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff." Id. If the Court determines that the makeup of a group or the way in which it was formed would prevent it from carrying out its duties as lead plaintiff, the Court "should disqualify that movant on the grounds that it

---

⁴ This is not a particularly difficult showing, as "the question at this stage is not whether the court would 'approve' that movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." Id. at 266.

will not fairly and adequately represent the interests of the class." Id.

To be clear, a group of unrelated individuals or entities may band together to serve as lead plaintiff under the PSLRA, but only if the Court determines that such group can "fairly and adequately represent the interests of the class." Id. at 266-67. As a specific example of the type of situation in which a group lead plaintiff movant might fail on adequacy grounds, the Third Circuit pointed to a scenario where "the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," stating that a court "could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." Id. at 267 (citing In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 307–08 (S.D.N.Y. 2001) (refusing to appoint as lead plaintiff a group that, in the court's view, was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel'").

It appears to the Court that the Eco Science Investor Group is precisely the type of lawyer-created group the Third Circuit cautioned about in In re Cendant Corp. The "group" spans the

country's geography, consisting of a retired physical therapist from Florida, a retired importer/exporter from Maryland, a flooring contractor from California, an entrepreneur from Arkansas, and a Proctor & Gamble employee from Pennsylvania. Their motion to be appointed lead plaintiff was filed on July 24, 2017. Two weeks later, on August 7, 2017, along with their opposition to Roschke's competing motion, the Group filed a joint declaration in an attempt to establish that they were the type of cohesive unit that could adequately manage the litigation. The Joint Declaration contained statements from each of the group members providing that "[a]fter due consideration, and after conferring with my counterparts, I decided to join the other group movants in seeking appointment as Lead plaintiff." (Joint Decl. [Dkt. No. 10-1] at ¶ 2-6). The group members additionally declared that "[a]s part of our efforts to formalize our joint leadership of the Actions and to demonstrate our commitment to jointly prosecuting the Actions, on August 1, 2017, the members of the Eco Science Investor Group participated in a conference call" to discuss various aspects of the case such as

> the strength of the claims against Defendants; a strategy for prosecuting these actions; the benefits that the class would receive from the leadership of a coordinated group of investors; the shared desire of the Eco Science Investor Group's members to achieve the best possible result for the class; the interests in prosecuting the case in a collaborative, likeminded

14

> manner; and the actions that the Eco Science Investor Group will take to continue to ensure that the class's claims will be zealously and efficiently litigated. We also discussed the benefits of having experienced law firms serve as Co-Lead counsel, and the procedures and mechanisms for communication and decision-making that will ensure that the putative class will benefit from our supervision of counsel.

(Id. at ¶ 9).

What the Joint Declaration does not provide, and what is conspicuously absent, is any information regarding how these five apparent strangers from different states found each other. Moreover, if the group members held a conference call on August 1, 2017 to discuss such preliminary matters, it is not clear to the Court how they could have made the joint decision to serve as lead plaintiff prior to the filing of their motion on July 24, 2017. In light of the above, the Court finds that the Eco Science Investor Group "cannot be counted on to monitor counsel in a sufficient manner." In re Cendant Corp. Litig., 264 F.3d at 267.

As stated above, after the Eco Science Investor Group, Roschke has the largest financial interest. As an individual, Roschke's motion does not present the same concerns as those posed by the Eco Science Investor Group, and Roschke has made a prima facie showing of typicality and adequacy.

With regard to typicality, the Court finds that Roschke's claims are typical of the proposed class. There is nothing in

15

the record that indicates to the Court that Roschke's case relies on a different legal theory than the rest of the class, or that the circumstances surrounding his loss are different than the rest of the proposed class. This case appears to turn on misstatements and omissions made by Defendants to the investing public, and like the Plaintiffs and other proposed class members, it appears to the Court that Roschke claims to have relied upon those statements to his detriment.

As to adequacy, it appears that Roschke is able and incentivized to represent the proposed class vigorously. Moreover, and as detailed further below, Roschke has obtained counsel with experience and expertise in securities litigation. Finally, there does not appear to be a conflict between Roschke's claims and those of the purported class.

Accordingly, this Court finds that Roschke is the presumptive most adequate Plaintiff, and Roschke will be named lead plaintiff unless the presumption is rebutted.

### iii. Rebuttal Evidence

"Once a presumptive lead plaintiff is located, the court should then turn to the question whether the presumption has been rebutted." Id. at 268.

> [T]he presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that

16

>    render such plaintiff incapable of adequately representing the class."

Id. (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II))(emphasis in original).

"[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate[ ]' job." Id.(alterations in original). "If no class member succeeds in rebutting the presumption, then the district court should appoint the presumptive lead plaintiff as the lead plaintiff." Id.

No member of the proposed class has introduced any evidence suggesting, let alone proving, that Roschke cannot fairly and adequately represent the proposed class. As such, the presumption cannot be rebutted, and Roschke will be appointed lead plaintiff.

### C. Appointment of Lead counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). As the Court has found that Roschke is the most adequate plaintiff, the Court will consider his selection of Glancy

17

Prongay & Murray LLP as lead counsel and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as liaison counsel for the proposed class.

Courts "should generally employ a deferential standard in reviewing the lead plaintiff's choices." In re Cendant Corp. Litig., 264 F.3d at 274. Courts are not, however, a rubber-stamp for plaintiffs' selection of counsel, and an inquiry into "whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms" is necessary. Id. at 276. In making this inquiry, courts are instructed to consider, among other things,

> 1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

Id. "[A]t bottom, the ultimate inquiry is always whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." Id.

The Court has reviewed the resumes of both law firms retained by Roschke, and while it is clear that both firms have considerable experience and expertise in securities litigation,

18

Roschke has provided the Court with no evidence concerning his legal experience, the process through which he selected lead or liaison counsel, or the agreement reached between he and counsel. Moreover, the Court is without sufficient information to determine the need for liaison counsel in this case or the anticipated division of labor between lead and liaison counsel.

Without such vital information, the Court cannot answer the "ultimate inquiry." i.e., whether Roschke's "choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." Id. Accordingly, the Court will reserve its decision on the appointment of lead counsel pending additional briefing from Roschke concerning the issues noted above.

### III. Conclusion

For the foregoing reasons, the Stires, Penhollow, and Lu Suits shall be consolidated and Richard Roschke shall be appointed lead plaintiff. In addition, the Court will reserve its decision as to the appropriateness of Roschke's selection of lead and liaison counsel pending subsequent briefing. An accompanying Order shall issue on this date.

_s/_Renee Marie Bumb
RENÉE MARIE BUMB
United States District Judge

DATED: February 13, 2018